UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES L. GARAVAGLIA and
MARY ANN GARAVAGLIA,

            Plaintiffs,                          Case Number 21-12740

v.                                                        Honorable David M. Lawson

UNITED STATES OF AMERICA,

            Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DISMISSING CASE WITHOUT PREJUDICE

When a taxpayer disputes the amount of taxes owed, she may contest that liability in federal Tax Court, or she may pay the tax and sue for a refund in federal district court. But the taxpayer cannot take both routes. If, after the Internal Revenue Service mails a tax deficiency notice, and the taxpayer has challenged the obligation in the Tax Court, "no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court." 26 U.S.C. § 6512(a). The plaintiffs in this case, Charles and Mary Ann Garavaglia, have litigated their tax obligations in several forums under various theories without success. But they have obtained some documents that they believe cast new light on their claims — documents that had been in the possession of the IRS — and they contend that they are entitled to a refund of taxes paid for the tax years 1989 and 1990. The government has moved to dismiss this latest installment of the decades-long serial litigation over the plaintiffs' tax liabilities, contesting the Court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and the sufficiency of the pleadings under Rule 12(b)(6). Because the plaintiffs lost a similar challenge in the Tax Court, and section 6512(a) is a jurisdictional statute, the case cannot proceed. Because the Court does not have subject matter jurisdiction over

the plaintiffs' claims, it will dismiss the case and express no opinion on whether the complaint states viable claims.

I.

The lengthy procedural history and factual background of the underlying tax dispute was summarized concisely by the court of appeals in its rulings addressing two recently preceding episodes in this long running taxation epic.

Chapter One is set in the 1990s era in federal criminal court. There, plaintiff Charles Garavaglia pleaded guilty to several counts of mail fraud and filing false tax returns. Although those convictions carried with them an obligation to pay certain income taxes that were past due to the government, the plea agreement specified that Charles remained liable for any additional taxes that the government might find that he owed.

In Chapter Two, the Garavaglias took their dispute to the United States Tax Court, which did not go well for them. The saga was reviewed in a climactic 2013 decision by the court of appeals affirming the judgment of the Tax Court. The panel through Judge Clay recounted the following:

> This case concerns a tax fraud dating to the late 1980s. In 1996, Mr. Garavaglia was indicted on nineteen counts, including mail fraud in violation of 18 U.S.C. § 1341, conspiracy to defraud the United States in violation of 18 U.S.C. § 371, falsifying tax returns in violation of I.R.C. § 7206, and failure to file a tax form for heavy vehicle use in violation of I.R.C. § 7203. In 1997, he pleaded guilty to two of the counts in the indictment, and was later sentenced to twenty-seven months' imprisonment, a term of supervised release, and restitution and fines. The plea bargain specified that Mr. Garavaglia would still be liable for any further tax deficiencies found and proven. In October 2006, the IRS sent Mr. Garavaglia a notice of deficiency, asserting that he owed federal income taxes from 1989 and 1990. In May 2009, the IRS sent a notice of deficiency to Ms. Garavaglia, for the same years' returns. Petitioners challenged the findings of deficiencies in tax court, in Detroit, Michigan, and on September 26, 2011, the tax court confirmed the Commissioner's determination of a deficiency. A final decision of the tax court was entered on January 13, 2012. Petitioners now appeal.

The facts of this case are addressed in great detail in the opinion of the tax court, and neither party challenges its findings with respect to the basic background of the case. Mr. Garavaglia married Ms. Garavaglia in September 1961 while he was working as a labor consultant for Central Transport, Inc. ("Central"). He advanced at Central until 1986, when he was fired. As part of a settlement agreement with Central, he was paid an annual consulting fee of $50,000.00, which went directly to his wholly owned S corporation, C&G Consultants ("C&G"). C&G was a labor consultancy, which also received payments from employee leasing companies that Mr. Garavaglia owned. Ms. Garavaglia was a homemaker, until 1989, when she became a secretary for one of Mr. Garavaglia's employee leasing companies. By the end of 1988, Petitioners had assets of about $1 million. George Rogers, who met Mr. Garavaglia when they were both at Central, also ran a consulting company, Sentury Services, Inc. ("Sentury") which provided similar services to C&G. He co-owned at least two employee leasing companies with Mr. Garavaglia. Douglas and Leroy Yarnell were employees in the accounting department of one of Mr. Rogers' leasing companies, D&S leasing ("D&S"). The Yarnells left D&S in 1986, and formed LTD Accounting, Inc. ("LTD") with Tim Yarnell (Douglas's brother and Leroy's son.), Mr. Garavaglia and Mr. Rogers were also co-owners of Trans Continental Leasing, Inc. ("Trans").

An employee leasing company effectively operates as a payroll manager for other businesses. An employee of a business is placed on the payroll of the leasing company, which for a fee, handles payroll management, including issuing paychecks, tax withholding and reporting, and insurance. Because the leasing companies act as the middle-men for insurance payments, there is the possibility that they can under-report the number of employees from a client company, and pocket the difference between what they take from the client companies to cover insurance and what they pay to the insurance companies for premiums. Because of this risk, insurance companies occasionally perform audits of employee leasing companies.

Throughout 1989 and 1990, Mr. Garavaglia's companies under-reported payroll by about 75%. In addition to failing to pay the total amount due in premiums to insurance companies, the companies reported the full amount due as a business expense for the purposes of both state and federal taxes. This was discovered after a workers' compensation audit determined shortfalls in Trans's premiums paid to an insurance company. The audit was handled by LTD. As a result of this audit, Mr. Rogers and Mr. Garavaglia had a falling out, and Mr. Garavaglia accused Mr. Rogers of embezzlement, while Mr. Rogers accused the Yarnells of manipulating the audit to make him look guilty. After the winding up of Trans was complete, Garavaglia and Leroy Yarnell incorporated Branch International ("Branch"). Mr. Garavaglia and his wife owned 70% of Branch, while Mr. Yarnell and his wife owned the remaining 30%. Branch engaged in the same under-reporting, and paid the difference in amounts reported and the amounts acquired to either C&G, LTD, or one of the Yarnells. In 1989 and 1990, the Garavaglias filed joint income tax returns, as well as returns for each of their companies.

> In November 1991, a confidential informant alerted the tax authorities to the fact that Mr. Garavaglia had been evading taxes. Investigators with the Criminal Investigation Division of the Internal Revenue Service ("CID") contacted Leroy and Douglass. Neither of them mentioned this to Mr. Garavaglia. In 1992, tax agents met with the Yarnells, and offered Leroy immunity in exchange for information that could be used against Mr. Garavaglia. The subsequent investigation, including wiretaps of conversations between Mr. Garavaglia and Leroy Yarnell, led to Mr. Garavaglia's arrest and indictment. Over 100 boxes of documents were taken during the execution of search warrants. Mr. Rogers and Mr. Garavaglia both pleaded guilty to charges related to the scheme in 1997.
>
> As part of his plea agreement Mr. Garavaglia agreed that he could still be found liable for tax deficiencies during the time that his scheme was in operation. In December 2000, the IRS commenced an audit of Petitioners. The auditors spent over 200 hours examining the records seized during the criminal investigation. In September 2002, the IRS contacted the Garavaglias' lawyer and advised him that its recommendation would be a determination of "no change" to the Garavaglias' tax liability for 1989 and 1990. Later that month, the IRS sent the Garavaglias a Form 4549 letter indicating that the IRS would not be seeking any additional payments for tax years 1989 and 1990, but the form also indicated that the decision was not final because it was subject to review by the Area Director. The IRS also informed the Garavaglias that if their attorney did not pick up the seized records, they would be destroyed. Ultimately, the IRS returned twenty-five boxes of documents to the Garavaglias attorney. The investigators also contacted Mr. Rogers to ask what to do with the Trans documents. Mr. Rogers told the agent to destroy them.
>
> Based on the letter sent by the IRS, Petitioners disposed of records from that period in either late 2003 or early 2004. Mr. Rogers also authorized the IRS to destroy records related to the Trans investigation. However, the audit was never formally closed, and in 2006, Petitioners were notified that the IRS had determined a significant deficiency. Petitioners then filed in tax court for relief from this audit, but the tax court largely affirmed the Commissioner's findings, and entered judgment, finding a tax deficiency of $97,070.00 for the year 1989, and of $114,683.00 for 1990, as well as additions, such as penalties, of $72,805.50 for 1989, and $86,012.25 for 1990. Therefore, the total tax due is $370,570.75. Petitioners now appeal that judgment.

*Garavaglia v. Comm'r*, 521 F. App'x 476, 478-80 (6th Cir. 2013). On appeal, the Garavaglias argued that they were entitled to spoliation sanctions for destruction of records by the government, that the government should have been equitably estopped from seeking further taxes due after it sent a letter stating that no further deficiencies would be sought, that the deficiency claims were insufficiently pleaded, and that the Tax Court erred by refusing Ms. Garavaglia's bid for the shelter

of the so-called "innocent spouse" exception under Internal Revenue Code § 6015(b).  The Sixth Circuit rejected all those arguments and affirmed the judgment of deficiency entered by the Tax Court.

Chapter Three begins in 2014, when the Garavaglias "brought [a] *Bivens* claim against the United States, the IRS, and unknown IRS agents." *Garavaglia v. United States*, 608 F. App'x 392, 393 (6th Cir. 2015).  In that suit, the Garavaglias "alleged that they had needed the [75 boxes of] destroyed records to defend effectively against the notice of deficiency in tax court, and that the IRS's destruction of the records therefore violated their due-process rights." *Ibid.*  "The district court dismissed the complaint, holding that sovereign immunity barred the Garavaglias' claims against the United States and the IRS, and that the statute of limitations barred their claims against the unknown agents." *Ibid.*  The dismissal was affirmed on the ground that the claims all were time-barred and the tolling exception for "concealment" did not apply. *Id.* at 293.  However, the court of appeals noted that it had come out in the record below that the IRS had discovered that 15 of the 75 boxes of records which it previously said were destroyed in fact still existed. *Ibid.*

Chapter Four of the ongoing epic kicked off with a FOIA suit that the Garavaglias filed in 2018 to compel production by the IRS of the boxes of rediscovered records that were not destroyed.  That case lingered for some time before Judge Terrence Berg in this district, until it was administratively closed in mid-2021, after Judge Berg found that the parties appeared to have reached a resolution of the dispute and that the production of FOIA disclosures was ongoing.  In his order administratively closing the case, Judge Berg summed up Chapter Four as follows:

> On July 13, 2017, Plaintiffs filed a Freedom of Information Act request seeking (1) "copies of all exam notes, files and records" related to the audit of their 1989 and 1990 individual income taxes, and (2) any additional boxes of their financial records that had not been disclosed but that the IRS still had in its possession. Plaintiffs eventually filed this lawsuit to compel a response to their FOIA request.

> Since then, the Parties have been engaged in production. At a November 23, 2020 teleconference with the Court, counsel for both sides indicated that the IRS was in the process of producing records in response to the first FOIA request, but that the parties were still attempting to determine the scope of the second request. The Court ordered the Parties to try to reach an agreement as to the scope of the second request and to file a joint status report within three months indicating their progress. As of February 18, 2021, the Parties have represented that production in response to the first request is complete and that the IRS has been making and will continue to make monthly releases of documents in response to the second request until it is also complete.

Order Administratively Closing Case, No. 18-12061 (E.D. Mich. Jul. 23, 2021).  No further activity has been recorded on the docket since Judge Berg's matter was closed.

Now comes Chapter Five.  That installment opens with the filing of the present civil action under 26 U.S.C. § 7422 seeking "the refund of tax and related interest erroneously and illegally collected and or retained from Plaintiffs by United States of America, Department of Treasury, Internal Revenue Service."  Compl. ¶ 1.  In their complaint, the Garavaglias state that on June 5, 2019 they filed Form 1040 X, Amended U.S. Individual Income Tax Returns, for the 1989 and 1990 calendar years, but "[t]he IRS has not responded to the Plaintiffs Amended Returns." *Id.* ¶¶ 5-7.  They allege that "pursuant to the amended returns" they are entitled to refunds of $603,515 for tax year 1989 and $637,639 for 1990, and they pray for damages in the amount of $1,241,154 for the allegedly improperly taxed amounts.

After the plaintiffs filed their complaint in this case in December of last year, the Court held an initial scheduling conference on March 14, 2022.  The parties reported that in the case before Judge Berg, it was determined that the IRS had around 140 boxes of records, and that the agency still was in the process of rolling production of those documents.  The plaintiffs' team had several lawyers engaged in an ongoing document review.  The Court established an initial disclosure deadline under Rule 26(a)(1), but advised the parties that further dates would be

discussed at a continued scheduling conference after a hearing on the government's motion to dismiss. The government had filed its motion to dismiss in lieu of an answer.

II.

The government first argues that the case must be dismissed under Rule 12(b)(1) because section 6512(a) of the Internal Revenue Code bars any suit to relitigate the tax liability for a particular tax year for which a petition was filed in the United States Tax Court. The government also contends that this action is barred by *res judicata*, because the plaintiffs' entitlement to a refund for tax years 1989 and 1990 was decided against them by the Tax Court in the prior suit, and that ruling became final when it was affirmed on appeal and no petition for certiorari was filed. The first argument is dispositive.

A.

A motion under Rule 12(b)(1) may be brought as a facial attack — that is, a challenge to the sufficiency of the complaint — or a factual attack — taking in evidence beyond the pleadings. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). Courts entertaining a factual attack have "wide discretion" to consider affidavits and documents "to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Gentek Bldg. Prods.*, 491 F.3d at 330. The Court also may take judicial notice of its own records. *See* Fed. R. Evid. 201(b)(2); *United States v. Doss*, 563 F.2d 265, 269 n.2 (6th Cir. 1977). Regardless of which sort of attack is presented, the plaintiff has the burden to prove the jurisdictional facts, *Cartwright*, 751 F.3d at 760, but all parties should have the opportunity to present evidence on the issue. The Court "has the power to weigh [that] evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* at 759-60.

"A taxpayer may dispute a tax deficiency in either Tax Court or a federal district court." *Roach v. United States*, 106 F.3d 720, 723 (6th Cir. 1997). "However, if the taxpayer proceeds in the Tax Court, the taxpayer may not sue for a refund in any other court." *Ibid.* "Title 26 United States Code Section 6512(a) provides: 'If the Secretary has mailed to the taxpayer a notice of deficiency . . . and if the taxpayer files a petition with the Tax Court . . . no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court.'" *Ibid.* Accordingly, "[a] district court must dismiss a refund claim relating to tax liability for a year previously determined by the Tax Court for lack of jurisdiction.") (citing *Solitron Devices v. United States*, 862 F.2d 846, 848 (11th Cir. 1989) (holding that district court lacked jurisdiction over taxpayer's claim to redetermine tax liability after taxpayer had litigated tax liability for subject year in Tax Court, even though issue to be litigated could not have been raised in prior litigation because it depended on post litigation events)).

According to the clear text of section 6512(a), the Court lacks subject matter jurisdiction to entertain the pleaded claims, which seek a redetermination of the plaintiffs' tax liability for the years in question, where those years were the subject of a petition in the United States Tax Court, the decision of which was affirmed on appeal.

To start, it is plain from even a casual reading of the four-page complaint that the entire substance of the suit in this case is a claim for recovery of taxes allegedly overpaid for the 1989 and 1990 tax years. The complaint explicitly demands refunds of specified amounts allegedly wrongfully withheld and overpaid, and the recovery of those refunds is the entire prayer for relief stated. The Sixth Circuit squarely has held that a district court lacks subject matter jurisdiction to entertain such a claim seeking to reexamine tax liability for any tax year for which a petition previously was filed in and decided by the Tax Court. *Roach*, 106 F.3d at 723. Moreover, any

such suit is barred regardless of the fact that it purports to arise from "new evidence" or post-judgment circumstances allegedly developed after the entry of judgment in the Tax Court. *Ibid.* (citing *Solitron Devices*, 862 F.2d at 848). The plaintiffs have not suggested that any of the enumerated exceptions to the jurisdictional bar in section 6512(a) could apply in this case.

In their response, the plaintiffs attempt to reframe the case as one merely seeking to compel the IRS to "process the amended returns," which they say have been ignored. However, the substance of the claims — and the applicability of the statutory bar to them — is settled by a plain reading of the pleadings. In similar contexts, when analyzing the scope of a statutory bar to suit, the Supreme Court consistently has held that the focus must be on the gravamen of the complaint as a whole, not on particular labels or terms of art affixed to the claims as attempts at artful pleading. *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, ---, 137 S. Ct. 743, 755 (2017) (holding that when determining if a lawsuit is brought under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, which contains an exhaustion requirement, "[t]he use (or non-use) of particular labels and terms is not what matters. The inquiry, for example, does not ride on whether a complaint includes (or, alternatively, omits) the precise words 'FAPE' or 'IEP' . . . . And still more critically, a 'magic words' approach would make [the Rehabilitation Act's] exhaustion rule too easy to bypass."); *see also OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 29 (2015), where the Court held that whether the jurisdictional bar of the Foreign Sovereign Immunities Act applies to a claim depends on a close reading of the locus and nexus of the conduct that allegedly caused the plaintiff harm, not merely the framing of any particular acts that may be described in the complaint.

In this instance, the complaint does not even attempt to frame the claims as anything other than a demand for specific amounts of taxes allegedly improperly assessed and collected. The

gravamen of the pleadings clearly embodies an attempt to reopen the dispute over the assessment of the plaintiffs' tax liabilities for the years in question.

Moreover, to the extent that the plaintiffs now contend that they seek an order of this Court compelling the IRS merely to "process the amended returns," any such relief is barred by the Anti-Injunction Act, and by the carve-out in the Declaratory Judgment Act, which prohibits the Court from issuing declaratory relief in any form that would interfere with the administration of tax collection. "The Anti-Injunction Act serves two related purposes. The primary purpose is 'to permit the United States to assess and collect taxes alleged to be due without judicial intervention,' and the 'collateral objective of the Act (is to protect) the collector from litigation pending a suit for refund.'" *Dickens v. United States*, 671 F.2d 969, 971 (6th Cir. 1982) (citing 26 U.S.C. § 7421(a); quoting *Enochs v. Williams Packing Co.*, 370 U.S. 1, 7-8 (1962)). As the Sixth Circuit held in *Dickens*, claims seeking relief from actions to collect taxes may not proceed merely because the taxpayer recasts them as prayers for injunctive or declaratory relief:

> We conclude that the Anti-Injunction Act precludes the relief sought by the plaintiffs and that the exception to that act is inapplicable. The plaintiffs, however, also characterized their suit as a mandamus action and a request for a declaratory judgment. Although the plaintiffs attempt to cloak their lawsuit as an action in the nature of mandamus the action is actually tantamount to an action for an injunction to restrain an assessment of taxes and therefore falls within the bar of (the Anti-Injunction Act). Similarly, the attempt to obtain declaratory relief is also deficient. In the first place, the Declaratory Judgment Act is not available "with respect to federal taxes." 28 U.S.C. § 2201. Moreover, the Supreme Court has stated that "the federal tax exemption to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act." Since we have already found the Anti-Injunction Act applicable we also find that declaratory relief is equally unavailable.

*Dickens*, 671 F.2d at 972 (cleaned up). Other federal courts readily have held that suits seeking to impose a duty on the Secretary to process a return or take other action concerning tax liabilities are barred. *E.g.*, *Lawson v. United States Internal Revenue Servs.*, No. 15-499, 2016 WL 4179790, at *5 (D.R.I. July 8, 2016) ("The Lawsons' remaining requests for relief are injunctive and

declaratory in nature, effectively seeking relief in the nature of mandamus. . . . By its enactment of the Anti-Injunction Act, 26 U.S.C. § 7421, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), Congress has made clear that neither injunctive or declaratory relief nor mandamus may be sought in federal court in connection with the collection of taxes. Therefore, sovereign immunity has not been waived and the Court's lack of subject matter jurisdiction bars these claims."), *R&R adopted*, 2016 WL 4179886 (D.R.I. Aug. 5, 2016); *Kolstad v. IRS*, No. 07-0089, 2008 WL 2246458, at *2 (N.D. Tex. May 30, 2008) ("If plaintiff seeks a writ of mandamus to require the IRS to assess taxes, penalties, and interest for those years, the court lacks jurisdiction to grant such relief. The IRS has no 'nondiscretionary duty' to assess taxes on demand.") (citing 26 U.S.C. § 6201(c)(3); *Stang v. Internal Revenue Service*, 788 F.2d 564, 565 (9th Cir. 1986) (noting that the IRS may assess tax liabilities of individuals 'at any time')).

The plaintiffs contend that "[c]ourts examining this issue have found that a properly formatted and executed amended return constitutes a claim for a refund, and therefore the Government's refusal to process the amended return creates a cause of action pursuant to § 7422," but the cases they cite do not support that proposition. In *Gillespie v. United States*, 670 F. App'x 393 (7th Cir. 2016), the Seventh Circuit affirmed the dismissal of a taxpayer suit on the ground that their "returns" asserting what amounted to a frivolous theory of tax protestation did not entitle them to any relief compelling the Secretary to process those returns. *Id.* at 395. The case did not hold that any duty to process a return could be enforced in the first instance by any order of a federal court. Similarly, in *In re Mahon*, No. 14-11575, 2017 WL 598466 (Bankr. D. Mass. Feb. 14, 2017), the bankruptcy court held that there was no authority for the proposition that the IRS had any duty to process a tax return. *Id.* at *11. As noted above, the decisions on point generally hold to the contrary — that the IRS cannot be compelled via either mandamus or declaratory

judgment to act on a particular tax return, or to undertake any other specific act regarding the assessment of a tax liability.

The plaintiffs respond that if this Court has no jurisdiction, they have nowhere to press their claims based on the newfound evidence that came from the records that the IRS had withheld. But when such new information comes to light in district court litigation, and a party believes that it should be relieved of the obligation of a judgment, Federal Rule of Civil Procedure 60(b) charts the route for relief. The Tax Court has an analogous rule. *See* Fed. Tax Ct. R. 162 ("Any motion to vacate or revise a decision, with or without a new or further trial, shall be filed within 30 days after the decision has been entered, unless the Court shall otherwise permit."). The Tax Court procedures also permit application of analogous Federal Rules of Civil Procedure where the circumstances warrant. *See* Fed. Tax Ct. R. 1(b) ("These Rules govern the practice and procedure in all cases and proceedings before the Court. Where in any instance there is no applicable rule of procedure, the Court or the Judge before whom the matter is pending may prescribe the procedure, giving particular weight to the Federal Rules of Civil Procedure to the extent that they are suitably adaptable to govern the matter at hand."). But even if the plaintiffs could not find comfort in those rules, the fact remains that section 6512(a) strips this Court of subject matter jurisdiction to adjudicate the complaint.

B.

The government also contends that the plaintiffs fail to state a viable claim because the *res judicata* effect of the prior Tax Court judgment bars their case. However, when the Court concludes that the defendants' argument that the Court lacks jurisdiction has merit, then the Court need not — and ought not — address the merits argument about whether the complaint states a cognizable claim for relief. *Brownback v. King*, --- U.S. ---, 141 S. Ct. 740, 750 (2021) (holding

that although a motion to dismiss may invoke both Rules 12(b)(1) and 12(b)(6), where the Court "lack[s] subject-matter jurisdiction for [any] non-merits reason[] . . . it must dismiss the case under just Rule 12(b)(1)"). The dismissal must be without prejudice. *Revere v. Wilmington Fin.*, 406 F. App'x 936, 937 (6th Cir. 2011) ("Dismissal for lack of subject-matter jurisdiction should normally be without prejudice, since by definition the court lacks power to reach the merits of the case.") (citing *Ernst v. Rising*, 427 F.3d 351, 366 (6th Cir. 2005)).

III.

The suit plainly seeks a redetermination of tax liability for tax years that previously were the subject of a petition and final decision in the Tax Court, and this Court therefore is without jurisdiction to entertain the suit. So it is that Chapter Five must come to a close.

Accordingly, it is **ORDERED** that the government's motion to dismiss for want of subject matter jurisdiction (ECF No. 10) is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITHOUT PREJUDICE**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   December 29, 2022